### IN THE

# SUPREME COURT OF JUDICATURE

### OF THE

# STATE OF INDIANA,

**AT INDIANAPOLIS. MAY TERM, 1875, IN THE FIFTY-NINTH YEAR OF THE STATE.**

———————

## JELLEY v. ROBERTS.

**JUDGE.**—*Bill of Exceptions.*—*Signing and Sealing a Ministerial Act.*—*Mandate.*—The mere act of signing and sealing a bill of exceptions is a ministerial act, and the Supreme Court may compel a judge to sign and seal a bill of exceptions, where it is shown that he has refused so to do.

**SAME.**—*Practice.*—*Application for Mandate.*—The application for a writ of mandate to compel a judge to sign a bill of exceptions must be accompanied by the bill of exceptions presented to the judge, which he refused to sign; and such bill of exceptions should be attached to the writ.

**SAME.**—An absolute refusal on the part of the judge to perform his duty should be shown as a condition precedent to granting a mandamus to compel the signing of a bill of exceptions. A mere qualified and temporary refusal or delay on the part of the judge does not amount to such a refusal.

**SAME.**—Where the return of a judge to an alternative writ shows that he is willing to sign a true bill of exceptions, but alleges that the bill as presented is not a true bill, the peremptory writ will be refused.

**SAME.**—Where a judge has settled, signed, and sealed a bill of exceptions, and alleges in his return to an alternative writ that such bill contains the truth, an appellate court will not, by a peremptory writ of mandate, com-

pel him to amend the same, either by striking out something which has been inserted, or by inserting something which has been omitted.

SAME.—*Judicial Act.*—The determination as to what facts should be stated in a bill of exceptions invokes the exercise of a legal discretion, and is therefore a judicial act.

SAME.—An officer cannot be compelled by mandate to do an act, where he has a discretion to do it or not to do it and as to the manner in which the act is to be done.

SAME.—Where conflicting questions arise concerning the facts to be inserted in a bill of exceptions, and where an inferior court has already signed one bill, it will not be compelled to amend it.

*H. W. Harrington,* for plaintiff.

BUSKIRK, J.—James S. Jelley, the appellant in a cause pending in this court from Ohio county, wherein Gaff and Gaff are appellees, has filed in this court a petition, alleging that the bill of exceptions in the record in said cause is incorrect in many particulars, which are specified, and praying for a writ of mandamus, commanding the Hon. Omer F. Roberts, judge of the Ohio Circuit Court, to amend said bill by striking therefrom certain things therein alleged, and by inserting therein certain facts which are alleged to have been improperly omitted.

The application was supported by the affidavits of Jelley and several other persons. An alternative writ of mandate was issued and served upon the judge below, commanding him to amend the said bill of exceptions, as prayed for, or show cause why a peremptory writ of mandate should not issue.

Judge Roberts has made a return to such writ, in which he avers that the bill of exceptions by him signed is true, and contains the facts as they occurred in the court below; and the facts therein recited, which the appellant desires struck out, should not be struck out, and the matters which the appellant seeks to have inserted have no existence in fact, and should not be inserted. He has also filed the affidavits of several persons in support of the truth of his said return.

The appellant has moved the court for a peremptory writ of mandate, commanding the said judge to change the said bill of exceptions as prayed for.

Jelley *v.* Roberts.

This motion presents for decision the question, whether this court possesses the power to compel the judge below to change and modify a bill of exceptions which he has signed, and which by his return he shows contains the truth.

We have made a careful examination of the authorities bearing upon the question stated, and proceed to state the conclusions reached by us. · ·

The mere act of signing and sealing a bill of exceptions is a ministerial act, and hence this court may compel the judge of a circuit court to sign and seal a bill of exceptions, when it is shown that he has refused so to do. In such case, the application for a writ of mandate should be accompanied by the bill of exceptions which was presented to the judge below, and which he refused to sign, and such bill of exceptions should be attached to or embodied in the writ. 'An absolute refusal on the part of the judge to perform his duty should be shown as a condition precedent to granting a mandamus to compel the signing of a bill of exceptions. And a mere qualified and temporary refusal or delay on the part of the judge does not amount to such a refusal as to warrant interference by the extraordinary aid of mandamus. And when the return of the judge to the alternative writ shows that he is willing to sign a true bill, but alleges that the bill as presented is not true, the peremptory writ will be refused, since the right to determine the truth of the bill rests exclusively with the judge himself.

But where a judge has settled, signed, and sealed a bill of exceptions, and alleges in his return to an alternative writ that such bill contains the truth, an appellate court will not, by peremptory writ of mandate, compel him to amend the same, either by striking out something which has been inserted, or by inserting something which has been omitted; for the reason that the determination as to what facts should be stated in a bill of exceptions invokes the exercise of a legal discretion, and is therefore a judicial act; and it is well settled that an officer cannot be compelled by mandate to do an act where

he has a discretion to do or not to do the act and as to the manner in which the act is to be done.

Where conflicting questions arise concerning the facts to be inserted in a bill of exceptions, and where the inferior court has already signed one bill, it will not be compelled to amend it, the question being regarded as within the peculiar knowledge of the judge before whom the cause was tried, and the superior tribunal will not, on proceedings in mandamus, hear and determine the facts on which the adjudication of the question must depend.

The law is accurately and fully expressed by High, in his work on Extraordinary Legal Remedies, from which we make an extended quotation. The learned author says:

"Sec. 199. The jurisdiction by mandamus to compel inferior courts to sign and seal bills of exceptions, or to amend such bills according to the truth of the case, seems to have been originally confined to the English court of chancery, and no instances are to be found of its exercise by the court of King's Bench. The earlier practice in this country was analogous to that of the English court of chancery, and an inferior court of law might be compelled by a compulsory writ, issuing out of chancery, and directed to the judges, to sign and seal a bill upon proper cause shown. While this compulsory writ, as it was called, was not, in terms, a mandamus, yet its effect was the same, and the jurisdiction thus exercised was substantially identical with that now made use of to accomplish the same result.

"Sec. 200. The power of compelling an inferior court of law to sign and seal a bill of exceptions, is now freely exercised by the courts of law of last resort in this country, even in those states where the separate chancery system still prevails. And where the court of final resort of a state has a general superintendence over all inferior courts, and is bound to enforce obedience to the laws of the state, and to compel subordinate courts to perform the duties legally incumbent upon them, the granting of the writ to compel the signing or amending of bills of exceptions may be regarded as falling

naturally and appropriately within the jurisdiction of such court. Even where the state court of last resort is vested only with appellate powers, it may, in aid of its appellate jurisdiction, and as a necessary incident to its proper exercise, grant a mandamus to require an inferior court to sign and seal a bill of exceptions, in order that the record of the case in the appellate court may be perfected, and to carry out and perfect the right of the party appealing.

" Sec. 201. As regards the mere act of signing and approving a bill of exceptions, it is held to be of a ministerial nature, and hence subject to control by mandamus, although a legal discretion is to be observed in determining the character of the particular bill to be signed. If, therefore, the court to which the writ is directed shows satisfactory reasons for not signing the bill presented, the peremptory writ will not go, but in the absence of any return showing such reasons, a peremptory mandamus will issue. And where it is shown that the court below has absolutely refused to sign a bill, and the relator avers that the matters therein contained are material to the determination of his rights on appeal, a proper case is presented for a mandamus to compel the signing of the bill. But it is always sufficient objection to the application for the writ, that the bill, as tendered to the court for its signature, was untrue, and where the relator does not deny the correctness of such a return, he is considered as having assented to it, and his application will be refused.

" Sec. 202. An important consideration to be borne in mind in the exercise of this branch of the general jurisdiction by mandamus, is, that the power of determining whether the particular bill of exceptions tendered is or is not true, rests exclusively with the court or judge before whom the cause was tried, and to whom the writ is directed, and the exercise of this power is beyond control by mandamus. All that the judge can be required to do, is to sign such a bill as presents the facts in accordance with his knowledge and recollection, since this must necessarily be the test in determining what particular bill shall be signed. Where, therefore, the judge returns

that the bill as originally settled by him was settled truly, according to the facts of the case as he remembers them, nothing more can be required of him. And where he has already signed one bill of exceptions, he cannot be compelled by mandamus to sign another and a different one, since it is his own exclusive province to determine the correctness of the bill which he shall sign. And in no event should the writ direct a judge to sign a bill absolutely, as presented, but only to sign it after it has been duly settled. So, where the return shows that the respondent is willing to sign a true bill, but alleges that the bill as presented is not true, the peremptory writ will be refused, since the right to determine the truth of the bill rests exclusively with the judge himself.

" Sec. 203. Mandamus will not lie to compel the signing of a second bill of exceptions in the same cause, where one has already been signed and certified, embracing the same grounds, and the whole matter involved has been adjudicated by the appellate court. And where conflicting questions arise concerning the facts to be inserted in the bill, and the inferior court has already signed one bill, it will not be compelled to amend it, the question being regarded as within the peculiar knowledge of the judge before whom the cause was tried, and the superior tribunal will not, on proceedings in mandamus, hear and determine the facts on which the adjudication of the question must depend. Especially will the writ be refused to compel the amendment of a bill where the statutes of the state afford ample remedy for the party aggrieved in such a case, and he will be left to pursue his statutory remedy.

"Sec. 204. While, as we have seen, the jurisdiction by mandamus is freely exercised to compel an inferior court or judge to settle and sign a bill of exceptions, which has been refused, yet the party aggrieved by such refusal must use due diligence in availing himself of this extraordinary remedy. And where there has been gross laches in allowing the bill to rest for many months before presenting it for signature, or where it has not been tendered until after the expiration of the time prescribed by law for that purpose, and after so long a period has elapsed

that the judge has forgotten the facts involved in the case, and is unable to remember whether the allegations contained in the bill are true or false, no grounds exist for a mandamus, and the inferior court is justified in such case in its refusal to sign the bill. Nor, in such case, will the fact that the parties to the cause have stipulated in writing to waive the statutory period for their mutual convenience, alter the case or vary the application of the rule, since such a stipulation cannot have the effect of altering the law, or of depriving the judge of his rights as to the time of signing the bill. And where the bill was not tendered to the judges at the trial, and not until the subsequent vacation, and was then presented to the judges individually, it was held that mandamus would not lie."

In support of the principles above announced, we cite the following authorities:

*The United States* v. *Peters,* 5 Cranch, 115; *Livingston* v. *Dorgenois,* 7 Cranch, 577; *Ex Parte Bradstreet,* 7 Peters, 634; *Life and Fire Ins. Co. of N. Y.* v. *Wilson's Heirs,* 8 Peters, 291; *Kendall* v. *The United States,* 12 Peters, 524; *United States* v. *Lawrence,* 3 Dallas, 42; *Marbury* v. *Madison,* 1 Cranch, 137; *Ex Parte Burr,* 9 Wheat. 529; *Bank of Columbia* v. *Sweeney,* 1 Peters, 567; *Ex Parte Crane,* 5 Peters, 190; *Ex Parte Roberts,* 6 Peters, 216; *Ex Parte Davenport,* 6 Peters, 661; *Ex Parte Bradstreet,* 8 Peters, 588; *Ex Parte Bradstreet,* 4 Peters, 102; *Life and Fire Ins. Co. of N. Y.* v. *Adams,* 9 Peters, 573; *United States* v. *Trigg,* 11 Peters, 173; *Ex Parte Story,* 12 Peters, 339; *Ex Parte Poultney* v. *The City of Lafayette,* 12 Peters, 472; *Ex Parte Hennen,* 13 Peters, 230; *The People* v. *Pearson,* 2 Scam. 189; *Rogers* v. *Hall,* 3 Scam. 5; *People* v. *Judges, etc.,* 1 Mich. 134; *The People, ex rel. Sweet,* v. *Adam,* 3 Mich. 427; *The People, ex rel. Barrett,* v. *Bacon,* 18 Mich. 247; *People* v. *Lee,* 14 Cal. 510; *Briscoe* v. *Ward,* 1 Har. & J. 165; *The State* v. *Hall,* 3 Cold. 255; *The State* v. *Elmore,* 6 Cold. 528; *Newman* v. *The Justices, etc.,* 1 Heiskell, 787; *The State* v. *Todd,* 4 Ohio, 351; *The People* v. *Jameson,* 40 Ill. 93; *State* v. *Noggle,* 13 Wis. 380; *Creager* v. *Meeker,* 22 Ohio St. 207; *Harris* v. *The*

*State*, 2 Ga. 211; *Engel* v. *Speer*, 36 Ga. 258; *The State* v. *St. Louis, etc.*, 41 Mo. 598; *Midberry* v. *Collins*, 9 Johns. 345; *Irving* v. *Askew*, 20 L. T. R., N. S. 584; *The People* v. *Baker*, 35 Barb. 105; *Gayler* v. *Wilder*, 10 How. 509.

In the present case, the judge below settled, signed, and sealed a bill of exceptions, and in his return he alleges that such bill is true. In such case, we cannot inquire whether such bill contains the truth or not. The irreconcilable conflict in the affidavits, as to what occurred in the court below, filed upon the hearing of the motion, is an instructive illustration of the wisdom of the rule, that it rests exclusively with the judge who tried the cause to determine the truth of the bill of exceptions.

Besides, it is alleged in the petition that a true bill of exceptions was presented to the judge below, which he refused to sign, but such bill was not filed with and made a part of the petition and writ.

The conclusions reached by us place in the hands of the judges of the courts below very great power and responsibility, which may, in some instances, be abused; but in our opinion all conscientious judges will feel that an obligation equal to the responsibility rests upon them to give the parties litigant a fair, truthful, and just bill of exceptions. A fair and just bill of exceptions is the right arm of defence to all parties against whom erroneous rulings have been made, for without it the error cannot be corrected in this court, where the question must be presented by a bill. The statute makes it the high and imperative duty of a judge to sign a bill of exceptions, when presented to him, if it is true; but if it is not true, he must correct it, or suggest the correction to be made, and sign it. A bill of exceptions imports absolute verity, because it is supposed to speak the exact truth. An unwillingness on the part of a judge to give a fair, truthful, full, and honest bill of exceptions, ought to be conclusive evidence that he is wholly unfit to discharge the high and responsible duties of the exalted office to which he has been chosen; for no greater wrong or injustice could be done a party than for a judge to

Jelley *v.* Roberts.

make an erroneous ruling against him, and then by an unfair bill of exceptions, which amounts to the suppression of the truth, if not the utterance of a falsehood, deprive him of the means of obtaining a correction of such errors in the court of last resort. An upright and conscientious judge will be not only willing, but anxious to afford to a party who supposes that erroneous rulings have been made against him, every facility to obtain the decision of the Supreme Court upon the supposed erroneous rulings. The judges of the lower courts are required to decide promptly and without time for reflection or the examination of authorities, and must necessarily commit many errors; but no pride of opinion, or dislike of a reversal, should induce them to withhold a true bill.

Powell on Appellate Proceedings, p. 232, says:

" Sec. 32. Although it is the imperative duty of the judge not to sign a bill of exceptions unless it is honestly and fairly true; or where it was not postponed until past the time allowed by law without his consent or action, or the consent of the opposite party, or it may be by common consent; yet it is at the same time equally the duty of every judge to aid, with a generous liberality and kindness, in getting a true bill, that will honestly and fairly present the truth of the question just as it was raised, without the least regard to the question whether that would have a tendency to support or reverse his decision. This, of course, is easier accomplished before a judge of learning, experience and ability, than one who has not that character. But on the part of both the judge and counsel, the proper discharge of this duty requires the greatest degree of generosity, affability and kindness."

We, therefore, do not apprehend that the great and almost absolute power vested in the lower courts will be wrongfully or oppressively exercised.

The motion for a peremptory writ of mandamus is overruled, at the costs of the petitioner.